The first case on the calendar is United States v. Archambault. Good morning. May it please the court, Robert Culp, assigned counsel for appellant Paul Archambault. I'm going to try to touch on aspects of my first three points in the brief. Just aspects of them, not everything I'm saying. Of course, I don't have enough time for that. I was not counsel below. In fact, as the court knows, Mr. Archambault was. Are you adhering to your point that he did not get appropriate advice with respect to representing himself? I know that you wrote your first brief without being aware of pages 1 through 11, and you made some statements in the brief that the court never addressed him personally, which turned out to be untrue when you learned about the July 23 proceeding. Are you still arguing that? I'm adhering to it, but I've certainly modified my argument, Your Honor. You're right. I did not know about that proceeding. That's understandable since it hadn't been docketed. It hadn't been docketed, correct. The court did address him pretty directly and said, you know, this is really a lousy idea. I don't see how you can possibly do as good a job as a lawyer would do. The rules of evidence are very complicated. You can't possibly understand them. I'm really telling you this is a terrible idea, and you realize how many years you potentially face. The court said all those things to him. The court said all those things, Your Honor, and certainly it's a night and day proceeding compared to the one that I analyzed in my first brief. But as I say in reply, and I think it is the 800-pound gorilla in the room in this case, it's the issue of what was standby counsel to be doing. Here's my question. Does a court, on very, very particular facts as are here, have a duty to reconsider what was an adequate, because it certainly was an adequate hearing at the beginning at which the person said, I don't want counsel. I want to defend myself. Does a court have some duty to reconsider that when it is apparent or might be apparent to it, I don't know if it would be, that the person would not have done it if he had any idea of how little standby counsel has to do because of his prior experience in the Northern District? I've never seen a case like that. I'd like to think about that as a possible issue. Is there a duty in a very particular case to go back and ask, do you still want, or did that happen because I'm not even clearer than what happened? What one might do is go back and see if there was that situation. I didn't find that case, Your Honor, either, but I certainly agree with you that it should be considered an ongoing thing. This is an unusual case in the sense I've coined a phrase for this argument. My client's a Feretta recidivist. He actually did this twice, charged with the same thing twice, and both times chose to represent himself. The first time it actually apparently worked out pretty well for him, but he did have that background in mind. He had active standby counsel the first time, and he didn't have it the second time. Exactly. I think trying to answer you and Judge LaValle at the same time, I actually think that the court should address that, and I think there's an opportunity for this court to say that in a decision in this case. Let's be careful because it cannot be so in every case that there is standby counsel, and the person says, I don't like standby counsel, that the court goes back and readdresses it. That is, I think you have to make your case, you have to argue that there is something so specific about this situation, the prior standby and the thing, and what he said, that makes it a case that's out of the ordinary. That's what you have to do. I am arguing that, and I'm also saying that even though my client can't complain about ineffective assistance of standby counsel, he can complain about lack of assistance. He did have the right to assistance in the sense of help with subpoenas and so forth and other things that he can't do in prison, but I still don't think it's that much of a burden on a court in this situation to say to the person who is waiving this important right, look, I'm going to appoint standby counsel, and here's what he or she is going to do or not do in this case. That didn't happen. It was left completely open-ended. Of course, my client brought into this case some memories of the prior case and how much assistance he was given then. I don't think it's a burden on the court to have to address that issue. I think this court should say in this case, yes, that should be part of the colloquy. I know you don't want me to go there . . . You're arguing for a rule that would be applicable going forward in all FREDA cases? Yes. Rather than an argument that you say there's something unique and exceptional about this case. Well, I think this case is unique and exceptional, but I imagine there are other FREDA recidivists out there. There are other situations like this where someone comes in with a . . . Every case can happen. Again, this is a mighty unusual one in many particulars, including your particular client who is . . . I don't disagree with you, Judge, just to make sure I'm being clear, that this should be an ongoing review type situation. I'm just saying that I also don't understand why it can't be made clear up front. I've cited some cases in my reply brief where the FREDA colloquy did include details about what standby counsel was going to do. Now, I'll be the first to tell you that those cases do not hold that this is what you're supposed to do in these cases. That's what I'm asking this court to do. There are cases where the judges have gone into it at that level of detail, and I think it's a good idea. Was standby counsel the same lawyer who he rejected as his appointed counsel? Yes. Yes. He had a prior lawyer from the Federal Defender's Office who got conflicted out for some reason, then he got appointed a CJA lawyer . . . A CJA lawyer, and he didn't get along with him. He was dissatisfied with, which is one of the reasons why he asked to represent himself, and then you know the rest of the story. It's in the record. There's motions. That was the same person who was appointed as standby counsel, the one he was dissatisfied with? Yes, Your Honor. That was the same person. And who then didn't even seem to recognize him. Yes. Yes. Can you address the limitation on your client's ability to cross-examine the victim's testimony, the argument about limitations on precluding evidence of the victim's sexual history? The Rule 412 argument, Your Honor? Yes. And he did object to this in a pro se capacity. The government made a Rule 412 motion to protect examination, sexual history, and so forth and so on, and Mr. Archambault objected and wanted to get into the fact that the complaining witness had misrepresented her age on other occasions, on other websites and so forth. The order didn't preclude him from bringing out that she had misrepresented her age. The order said you can't get into her sexual history. Can't get into your sexual history, but also, Your Honor, limited him to the contradiction on That is exactly the point in terms of the difference between counsel, standby counsel, and not. He says he thought he was barred from asking this, and had he had counsel, he would have known that the order, in fact, allowed him to do just that. That is an important point because it may go to whether this fact of not having was harmful or not. And that's in your favor that, in fact, the order allowed him to do what he wanted to do, but didn't realize he could do. That is an important point, Your Honor, but I want to be clear to Judge LaValle's question. There was information in discovery that the complaining witness had misrepresented her age on other sort of social media type websites, and Judge Arcara, in this case, limited the defendant to the instance that he was involved in, his interaction with her. There was a discrepancy in the age. Apparently, on one part of the profile, it says she was eighteen. Another part of the profile, it says she was sixteen. He was forbidden from getting into these other instances of age misrepresentation. Now, I think . . . Did he say to the judge, I understand that I'm not allowed to get into her sexual history. All I want to bring out is that she represented herself as being eighteen years old. I don't think he put it quite that way, Your Honor. I think, to Judge Calabresi's point, it would have been good to have someone to make that point, but I think . . . It was his choice not to have counsel. That was a really stupid thing to do, but he's entitled to do it. But he wasn't standing rock solid on, I have to go into sexual history. His point was about the age, lying about the age. It would have been very easy for this district court to craft an order to say, you are not to get into any of the substance of discussions with other men or anything like that. None whatsoever. The only thing I'm going to let you get into is whether she misrepresented her age on other occasions to other people. It could have been left that narrow. She had represented herself to be eighteen years old on the website where the chat room . . . There's no quota on impeachment of a witness, especially a witness this important. Limiting them to one occasion does not satisfy the constitutional right to confrontation, Your Honor. I think that was an abuse of discretion. I think it would have been very easy to reconcile, to balance the protection of the witnesses and from going into their sexual history. I totally support that. But, misrepresentation, particularly one that was a defense that three of the four counts in this case, was a very significant issue in this case. Let me get something clear. Are you saying that the judge's order, that any aspect of the judge's order or ruling on this, was reasonably understood by the defendant as saying you're not allowed to bring out that she misrepresented her age on other occasions? Yes. I think it's exactly what the judge said. Can you point me to exactly what you're referring to with pages and . . . It's in Special Appendix . . . If you'd like, I can come up on reply. I think it's Special Appendix 16, Your Honor. Special Appendix Page 16. I should probably continue, and I'll try to find that. This evidence would go to her credibility, and it would also . . . You also say it's probative on these defenses. I'm not sure I quite see it's as probative, because the defense was that your client believed she was an adult. Allowing your client to elicit what she had told him would be extremely important, but what she had told others, somewhat less so. It's only through a propensity inference that that becomes relevant, right? Yeah, I guess it is a propensity argument, but I've never heard of a case that says that you only get one shot at that in cross-examining a witness. I mean, it's credibility, I would call it, not propensity. But why credibility? I mean, is she saying, I never said in other situations, or I never said to him? I mean, I don't quite see how that goes to her credibility. It may go somewhat to his credibility when he said, I thought. But that's a subsidiary argument on that, isn't it? Well, prior instances of misrepresentation of an essential fact in the case, I think, does go to credibility. I think it goes right to it. I'm not saying that it wouldn't have been very good for him to have had that evidence in. Yeah, I think it would have been good for him to have had that evidence in. And then that brings us back to the whole question of whether he waived his right to counsel, et cetera, et cetera. So I've gone quite a bit over. So I mean, I have some other points I would have made, but I don't want to take advantage. Thank you. Good morning. May it please the Court. Mary Catherine Baumgarten for the United States. If I may go right to the 412 argument follow-up where the Court just left off with opposing counsel. Judge Calabresi, you hit the point. The point is not the credibility of the victim. It's the defendant's articulated defense throughout the progress of the case. It was an absence of mistake of the victim's age. He clearly was able to put in before the jury the fact that he was permitted. Whether he was able without counsel is another issue. He was permitted to and did introduce evidence of the inconsistency in the two different locations within the victim's meetme.com website. Actually, if you look back at the victim's original testimony, her last name is Salters, the victim, the government elicited it. Specifically, the prosecutor elicited and introduced into evidence as governments, I believe it was Exhibit 1, the meetme.com profile that highlights the 18-year-old age that the victim includes at one point. And then she says, hi, she gives her name. I'm 16 years old. I attend Bennett High School. I'm awesome, I think is the word, at video games and things, and I live with my mom. That is squarely put in front of the jury in the government's case. It said 16 years old or 18 years old? She says both, Judge LaValle. She says 18 at one point, and then she says, I'm 16 years old. I go to high school. And that was elicited during the direct testimony, and the actual exhibit put up on the overhead screen or whatever they call them. The jury saw all that. The defendant actually also, during his cross-examination of the victim, asked her about their specific communications. And that's the balancing that Judge Arcaro did in this particular instance to address specifically bleeding into impermissibly sexual history. Because the other girl, if you will, the girlfriend, she actually was, that term is not just a friend. She was a girlfriend to the 16-year-old victim that goes to the hotel room with Archambault. And so that's what he was trying to also explore. And he says it during the earlier proceedings. He wants to bleed into the nature of that relationship to further present a certain viewpoint of the victim, the 16-year-old victim, and her exploration sexually. So it's out there. It's very clearly in front of the jury. This does go. I'm sorry. I'm not sure. You're saying that it was brought out that there was a sexual relationship between the two young women? No. I'm sorry. When I said it was out there, I meant that the issue with the inconsistency between the victim's age in her meetme.com account and specifically the communications that existed between the defendant and that victim. Judge Arcaro did not limit that. That was his balancing because he wanted to ensure under the exception that of 414 and, excuse me, 412, that he would be in a position to put in all the evidence that didn't run afoul of 412 in support of that defense. So the defendant does get that opportunity to explore all of that. He is permitted to do it. I have a completely different thing, and that is I take it that it is settled law that when a person takes a picture of a sexual act between him or her and another person who is below 18, just a picture for his own use, that that is the production of child pornography? Correct. It doesn't have to be. That is settled? Yes. I'd like to know how frequently the government, if you know, in cases of that sort, brings charges under production of child pornography. It seems to me, just speaking aside from precedence, that self-portrait consensually photograph of a sexual act between somebody, say, who is 18 and somebody who is 17 is something that may happen and is wildly different from the production of child pornography with all sorts of other implications. Now, again, this is a very particular case. This is a very sick or something person. But is this the kind of thing that is a production of child pornography which, if done twice, gets a 25-year minimum? And in that situation, is it appropriate to go beyond what is required when, after all, had the prosecution, if in most cases you wouldn't even bring a case like that? I'm just, you know, I don't know, but this is troubling to me because it seems to put two things, all of which are dead wrong, mind you, but they're very different kinds of things, in the same basket. Without going beyond the record, what you're asking me, sort of, if I can distill it down to make sure I understand it is, what is the sort of prosecutorial discretion or discussion that occurs, considerations that occur in looking at each case? The argument is made that the sentences of this case is substantively unreasonable. That's a very difficult argument when something is within guidelines, when it is said that adding the other part as consecutive is recommended. You know, there are any number of reasons for saying that that is a very difficult argument to make. On the other hand, one of the reasons that we have guidelines and we have courts have discretion, and that then we have discretion, is because prosecutors have discretion and courts have to look to how the prosecutors exercise their discretion, and we have to look at how the court does. It's a way of saying, is this case being treated in the way that these cases are by and large? Now, you know, I wrote the opinion for this court, which says we very rarely do anything, but still. This case, I think the court hit it on the head when you said it was an unusual case, because Mr. Archambault, as the court knows, I think we can all agree that he got a very light sentence with, I think Judge Arcaro's term, is strikingly similar conduct. And then he commits this conduct within two weeks, or excuse me, two months after he absconds from the Northern District, after essentially getting a 36-month case on a production case. It's hard for me to answer . . . It's hard. It is hard to imagine a more self-destructive person than this one, from beginning to end. I think the term also, though, is coined by Judge Arcaro as manipulative, because that's what the record evidence, and I believe that's what the jury found when they found him guilty of all of these offenses, is because . . . You know, this is a case where, as I said, there were reasons why the judge, the district court, and the Northern District believed the defendant's protestations that this is one and done, I made a graphic or terrible error, I will not repeat it, I will not jaywalk. There's no doubt that the first round, he got off very easy. There's no doubt about that. And then thereafter, immediately absconds and then commits this heinous offense. I mean, I think that that bleeds right into the court's recognition that the district court here, many different ways, strongly encouraged Mr. Archambault not to proceed pro se. I don't believe that there's any record support that the relationship between Mr. Molloy and Mr. Archambault was acrimonious. I believe that Mr. Archambault wanted Mr. Molloy to do things that Mr. Molloy didn't wish to do. That, I think, is furthered by the fact that after the case proceeds, Mr. Archambault has some difficulties bringing himself to sentencing. Mr. Molloy continues to represent him. Mr. Molloy meets with Mr. Archambault. Mr. Archambault asks Mr. Molloy to intercede on his behalf and speak specifically with respect to sentencing. I also scoured the record to try to locate any record evidence to support any specific claims that Mr. Archambault may have made of a deficiency of Mr. Molloy's conduct. There's two things that jump out at me, and I've noted them specifically in the brief. I've given you appendix citations for those. They relate specifically to the failure to subpoena Mr. Archambault's father, who was a federal inmate serving a receipt of child pornography sentence of 15 years. What Mr. Archambault could have, Mr. Archambault Sr. By the way, this may seem to the side, but there was a government offer when he was counseled of a plea. I haven't been able to find that. What was that government offer for a plea? I wasn't trial counsel below, Your Honor, so I cannot speak to what the plea was. I know that it was much more favorable than the 30 years that he was sentenced to. So that even in this case, the government was considering a plea to a charge that was not the production of child pornography? That I can speak to without being extra record, having handled some of these. I see that my time has handled some of these matters. Often it's a consideration to spare the victims the testimony. I mean, it was hard. The cross-examination is reflective. Oh, there are plenty of reasons why, but you can tell us that in fact, since it would have been below, you don't know what it was, but it would have been below the mandatory minimum, it must have been not a charge of production of child pornography second time. And it could have been often the way it would be done. There are any number of charges. Or in a way that might have implicated those guidelines without implicating the mandatory minimum. Can I just ask one question on another subject? The cell phone that came from the mother and the district court ruled that there was apparent authority to search. What does the record reflect about whether the portion of the phone that the defendant had been using was password protected, locked? You know, that's interesting. He makes that claim. I don't see any record support that establishes that, in fact, it actually was. What occurred, I can speak to the record at trial that how Mr. Archambault's mom receives the phone is through Mr. Archambault's wife's sister. And so, however it is, it gets dropped off to Mr. Archambault's mom from her, and she's able to access it. His mom is. And she does it, in fact, and gives it to his half-brother who's ten years old. She buys the phone. She puts it on her cell phone plan. So, there's no direct evidence supporting that introduced by the defendant, or the appellant, Your Honor. Thank you. Thank you. I can't give you a record set on that last point. On the microphone, please. Forgive me. I can't give you a record set on that last point. I was scrambling. But I believe that he makes that claim in his post-trial motion about that very issue, the phones, that he maintained it as locked. I think that comes directly from him in the post-trial motion number two or three, whichever one it was. You asked about the offer. I don't believe the specifics of the offer are on the record. But since counsel said it was much more favorable, I'm going to counterbalance that based on my knowledge that it wasn't that favorable. And maybe we'll be in equipoise there. I think I can say this, that it didn't do anything about that 25-year mandatory minimum. Forgive me for going a little bit outside the record, but I wanted to join opposing counsel that way and kind of reconcile that. The complaints about prior counsel was mentioned. It's all over the record. It's . . . I'm just going to bring my cheat sheet up here. There's multiple complaints about prior counsel. There's multiple complaints asking to adjourn the trial, which bleeds into that. There's three or four instances. I've got them all in the appendix, and I cite them in the briefs. The one thing I'll mention, it's fair, that it's long on . . . When Mr. Archambeau is sending these handwritten complaints in, it's a little long on rhetoric and a little . . . I'm trying to subpoena. He does get into it a little bit more in his post-trial motion, which I'll commend to your attention. It's at A191-99 of the record. It is fair to say that he's not terribly specific in his complaints. He says that the standby counsel is not visiting me. He's not helping me with subpoenas. He doesn't say, I'm trying to subpoena this bank or this hotel or whatever. It's low on specifics. My response to that, if you'll permit me, it's in the reply brief, is that this is the world of Feretta. We let people commit legal suicide in front of us in courtrooms under Feretta, but we do insist . . . and this is more the McCaskill case than the Feretta case . . . that they be accorded the dignity of that effort that's been criticized since Abe Lincoln. I don't think he was accorded that dignity, forgive me. How clear is it that this guy is saying or can be taken to be saying, if I don't have standby counsel that does things, then I want to reconsider whether I defend myself? I need your help on that, Judge. He doesn't say that. I don't think he says that in those words. He is complaining over and over again about . . . It's clear to me that even if we take this case as specifically, that that would be going too far, but is there enough so that it might make sense to remand to the district court for consideration of whether that . . . No, you can have counsel now. Is there enough at least to get to that point? I think there's grounds for that. It's pretty clear that . . . and it goes back to his lack of specificity in part. It's pretty clear that the district court doesn't know what he's talking about when he's making these complaints. At one point he says, I don't understand what you're saying, and then standby counsel says, well, I'll go bring the file to his . . . I guess he had been moved from one facility to the next. I'll go bring the file over there, and that was kind of the end of it. I don't think there's any kind of scrutiny here of these complaints. That's certainly what I'm saying. I didn't get a chance to talk about the substantive unreasonableness argument which came up in your colloquy, and I'm not going to go into it. I commend you to my briefs, which I do go into at length. I recognize it's an uphill task, but I would like to point out that this is behavior. However critical it is to do this thing, get sent to jail and then do it again, it is behavior that's legal in many states, and when you turn it into production of child pornography, which to me is . . . Well, the underlying behavior is . . . I understand that. . . . photograph is not. But when you turn it into production of child pornography, which it isn't, it's statutory rape is what it is. It's sex with a minor. It's not production of child pornography, but that gives them all of the leverage in terms of the 25 to 50 and the guidelines and so forth. I do think it's inappropriate. I'm not sure what I can do about it. I think counsel was correct in saying that technically that is production of child pornography when you take a picture while you're having sex, but I don't think it is in any meaningful way. I thank the court for its indulgence of my arguments. Thank you. Thank you both, and we'll take the matter under advisement. Very well argued by both sides. Thank you.